UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DAVID MCNEELY, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SPARKS, PETER LOESCHNER, KEVIN DACH, CHRIS CRAWFORTH, and DOES I–X,<br><br>Defendants. | Case No. 3:23-cv-00587-LRH-CLB<br><br>ORDER |

Defendants City of Sparks, Peter Loeschner ("Detective Loeschner"), Kevin Dach ("Detective Dach"), Chris Crawforth ("Chief Crawforth") (collectively, "Defendants") move the Court to dismiss (ECF No. 10) Plaintiff David McNeely's ("Plaintiff") Complaint for Damages (ECF No. 1). Plaintiff opposed (ECF No. 15) and Defendants replied (ECF No. 16). For the reasons contained within this Order, the Court grants Defendants' motion to dismiss (ECF No. 10).

**I.    BACKGROUND**

This matter involves the Sparks Police Department's ("SPD") investigation into a tracking device Plaintiff secretly installed on the vehicle of Reno Mayor Hillary Schieve (the "Mayor"), which tracked the Mayor's location using a satellite-based global position system when she operated the vehicle ("GPS Tracker"). Plaintiff's allegations involve his grievances with SPD, which is operated by Defendant City of Sparks. ECF. No. 1 at ¶ 4. Chief Crawforth was, at all relevant times, the Chief of Police with SPD. *Id.* at ¶ 5. Detectives Loeschner and Dach both worked on the investigation into Plaintiff's GPS Tracker as detectives with SPD. *Id.* at ¶¶ 6, 7.

Following SPD's investigation, Plaintiff commenced this action based upon alleged violations by Defendants of Plaintiff's rights under the First and Fourth Amendments to the United States Constitution as well as an alleged tort claim under Nevada law.

Accepting the factual allegations in Plaintiff's complaint as true, the Mayor discovered the GPS Tracker secretly installed on her vehicle on November 4, 2022, as a result of a routine mechanic's visit. ECF No. 1 at ¶ 16. She reported it to law enforcement, and on November 6, 2022, "[SPD] began an investigation into the source and origination of the [GPS Tracker]." *Id.* at ¶ 18. Detective Loeschner was assigned to lead the investigation. *Id.* at ¶ 19. He was provided with photographs of the GPS Tracker and its location on the Mayor's vehicle as well as "a screenshot that the device was associated with a company called Family 1st [sic]." *Id.* at ¶ 20.

On November 8, 2022, Detective Dach discovered that the GPS Tracker's Subscriber Identity Module ("SIM") card "was registered to an AT&T Business." *Id.* at ¶ 21. He then conducted a "forensic extraction of the SIM card and obtained the phone number associated with [it]." *Id.* at ¶ 22. "Detective Dach sent administrative subpoenas to AT&T for records related to the SIM card . . . ." *Id.* at ¶¶ 23, 37. That same day, Detective Loeschner sent an administrative subpoena to "Verizon and Family 1st [sic] requesting records, whereby Family 1st [sic] notified Defendants that the [GPS Tracker] was not part of [its] network." *Id.* at ¶ 24. Detective Loeschner then "authored an administrative subpoena for AT&T records." *Id.* at ¶¶ 26, 37.

On November 9, 2022, Detective "Dach notified [Detective] Loeschner that he received information from *the sister company of Family 1st* [sic], identifying [Plaintiff] as the purchaser of the [GPS Tracker] as well as data therefrom." *Id.* at ¶ 27 (emphasis added). Based upon Plaintiff's complaint, the source that provided Defendants with Plaintiff's identity is "the sister company of Family 1st [sic]." Plaintiff fails to identify this "sister company and does not allege that Defendants sent an administrative subpoena to the company. *See generally* ECF Nos. 1, 15. On November 10, 2022, Defendants performed a background check into Plaintiff's criminal history, yielding no results. *Id.* at ¶ 46. On November 15, 2022, Defendants interviewed Plaintiff and "determined that [he] was a licensed investigator and retired law enforcement officer . . . ." *Id.* at ¶¶ 48, 54. Defendants met with the Mayor on November 17, 2022. *Id.* at ¶ 48. During this meeting, which

took place during SPD's "investigation into the source and origination of the [GPS Tracker]," Defendants identified Plaintiff as the source of the GPS tracker secretly installed on the Mayor's vehicle. *Id.* at ¶¶ 18, 48–61. Plaintiff alleges that SPD then disclosed that it had not identified any crimes committed or civil codes violated by Plaintiff in the course of acting as a private investigator. *Id.* at ¶¶ 48–61. Defendants then allegedly advised the Mayor that, to compel any further information from Plaintiff, she would need to "obtain a subpoena by a judge in a civil action." *Id.* at ¶ 62.

After the Mayor initiated a lawsuit against Plaintiff in state court, Plaintiff commenced this action against Defendants in November 2023. *Id.* at ¶ 78. Plaintiff asserts the following six causes of action: (1) "Violation of First Amendment right to Privacy, Speech and Petition" under 42 U.S.C. § 1983 ("Section 1983") against Defendants; (2) "Failure to Train" under Section 1983 against Defendant City of Sparks; (3) "Municipal Liability—Ratification," i.e., a "*Monell*" claim, against Defendant City of Sparks; (4) "Violation of the 4th Amendment . . . " under Section 1983 against Defendants; (5) "Failure to Intervene in Violation of the 4th Amendment . . . " under Section 1983 against Defendants; and (6) "Intentional Infliction of Emotional Distress" against Defendants.[1] *See generally id.* Defendants subsequently filed a motion to dismiss, arguing that the Court must dismiss each cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10.

**II.    LEGAL STANDARD**

A party may seek the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the notice pleading standard of Federal Rule of Civil Procedure 8(a). *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(a) does not require

---

[1] While it is not the subject of this motion, the Court notes that issues exist with the manner in which Plaintiff's second, third, fourth, and fifth causes of action are pled in his complaint. *See* ECF No. 1 at ¶¶ 103–69; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Gordon v. County of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021).

"detailed factual allegations;" however, a "pleading that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient and fails to meet the broad pleading standard under Rule 8(a). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To sufficiently allege a claim under Rule 8(a)(2), viewed within the context of a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the alleged misconduct. *See id.* at 678–79 (stating that "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks and citations omitted)). Further, in reviewing a motion to dismiss, the court accepts the factual allegations in the complaint as true. *Id.* However, "bare assertions" in a complaint amounting "to nothing more than a 'formulaic recitation of the elements'" of a claim are not entitled to an assumption of truth. *Id.* at 680–81 (quoting *Twombly*, 550 U.S. at 555). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.*

### III. DISCUSSION

#### A. Plaintiff's First Cause of Action

Defendants move to dismiss Plaintiff's first cause of action on the basis that it fails to state a cognizable claim under the First Amendment to the United States Constitution. ECF No. 10. Plaintiff's First Amendment claim fails for two reasons. First, Plaintiff's first cause of action offers only bare assertions void of requisite elements of a cause of action supported by factual allegations.

ECF No. 1 at ¶¶ 12–102. Second, Plaintiff fails to state a First Amendment claim that is plausible on its face.

Plaintiff brings his first cause of action under Section 1983 and alleges that Defendants violated his "First Amendment right to privacy, speech and petition." ECF No. 1 at 15. "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." *Sweaney v. Ada County,* 119 F.3d 1385, 1391 (9th Cir. 1997) (internal quotation marks and citation omitted)). The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. CONST. amend. I. The Supreme Court has also ruled that the First Amendment protects the right of association. *See, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984).

Here, Plaintiff fails to state a First Amendment claim that is plausible on its face. Plaintiff asserts that Defendants "disclosure of [his] identity was a blatant violation of [Plaintiff's] First Amendment right to privacy and anonymity." ECF No. 1 at ¶ 95. Plaintiff appears to claim that this "right to privacy" was triggered when SPD located Plaintiff and he informed law enforcement that he was tracking the Mayor's vehicle for an undisclosed client who hired him to perform a self-proclaimed "politically motivated" investigation into the Mayor. *Id.* at ¶ 95. Plaintiff also asserts that he had a right to "engage in his job" while remaining anonymous because the First Amendment protects private investigators conducting "political investigation[s]." *Id.* at ¶ 90.

However, the First Amendment neither provides Plaintiff a "right to privacy" nor prohibits Defendants from notifying the Mayor of Plaintiff's identity under the circumstances. Those circumstances being Defendants updating the Mayor as to the results of SPD's investigation, wherein law enforcement discovered Plaintiff's identity by using a phone number, which he voluntarily associated with a tracking device he secretly installed on the Mayor's vehicle.

Nevertheless, Plaintiff attempts to support the existence of his "rights" under the First Amendment by relying upon the following sources of law. First, Plaintiff provides a citation to *In re Crawford*, 194 F.3d 954 (9th Cir. 1999). ECF No. 1 at ¶ 87. But *Crawford* does not support Plaintiff's position because, in *Crawford*, the Ninth Circuit Court of Appeals did not interpret or

5

apply the First Amendment, whatsoever. *See generally* 194 F.3d 954. Next, to support his position, Plaintiff attempts to rely on Nevada statutory law as well as an opinion related to child support issued by the Superior Court of Pennsylvania. ECF No. 15 at 14. But neither of these sources of law supports Plaintiff's argument related to the First Amendment, and Section 1983 does not permit Plaintiff to bring a cause of action against Defendants for alleged violations of Nevada statutory law. *Sweaney,* 119 F.3d at 1391.

Finally, Plaintiff provides citations to opinions issued by federal courts interpreting protections under the First Amendment, all of which are unrelated to Plaintiff. ECF No. 1 at ¶¶ 89, 94. The opinions are distinct from the instant case and do not apply to Plaintiff. Moreover, the opinions do not support Plaintiff's argument that the First Amendment provides the "rights" he attempts to assert here. *See Americans for Prosperity Foundation v. Bonta*, 141 S.Ct. 2373 (2021) (holding that a state law requiring charitable organizations that solicit funds must disclose the identities of major donors to the state's attorney general violated the First Amendment); *Watchtower Bible and Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002) (holding that an ordinance requiring all door-to-door canvassers to register with the government violated the First Amendment); *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999) (holding that statutory requirements related to initiative-petition circulators and proponents of the initiatives violated the First Amendment); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (holding that a statute prohibiting the distribution of anonymous campaign literature violated the First Amendment and the freedom to *publish* anonymously is protected by the First Amendment); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association . . . ").

Here, Plaintiff's complaint does not involve the mandated disclosure of an organization or an individual engaged in an activity protected by the First Amendment. The First Amendment does not provide a "right to privacy." Nor does the First Amendment prohibit Defendants from notifying the Major of Plaintiff's identity during a police investigation into the GPS Tracker Plaintiff secretly installed on her vehicle. Therefore, Plaintiff's complaint fails to meet the broad pleading standard

under Rule 8 and does not state a First Amendment claim that is plausible on its face. Thus, the Court grants Defendants' motion to dismiss in regard to the first cause of action.

### B. Plaintiff's Second, Third, Fourth, and Fifth Causes of Action

Next, Defendants move to dismiss Plaintiff's second, third, fourth, and fifth causes of action on the basis that each fails to state a cognizable claim under the Fourth Amendment to the United States Constitution.[2] ECF No. 10. Plaintiff brings his second, third, fourth, and fifth causes of action under Section 1983. ECF No. 1 at ¶¶ 103–69. Each cause of action is premised upon Plaintiff's allegation that his right to be free from unreasonable searches and seizures under the Fourth Amendment was violated. *See id.* Plaintiff's second, third, fourth, and fifth causes of action fail for two reasons. First, Plaintiff's causes of action offer only formulaic recitations of the elements of Fourth Amendment claims or *Monell* claims based upon alleged violations of the Fourth Amendment; each of which is supported only by labels and conclusions. ECF No. 1 at ¶¶ 12–169. Second, Plaintiff fails to state a Fourth Amendment claim that is plausible on its face.

The Fourth Amendment[3] provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. Because the Fourth Amendment protects people rather than places, the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person

---

[2] Under Plaintiff's second, third, fourth, and fifth causes of action, at times, it appears he attempts to bring *Monell* claims, and, at other times, he should have brought *Monell* claims given his theory of liability. *See* ECF No. 1 at ¶¶ 103–69. As previously stated, "Section 1983 . . . creates a cause of action for violations of the federal Constitution and laws." *Sweaney,* 119 F.3d at 1391 (internal quotation marks and citation omitted). Section 1983 claims brought against a municipal entity are recognized by courts as "*Monell* claims." *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). In *Monell*, the Supreme Court held that "a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents." 436 U.S. at 694. To impose *Monell* liability on a municipality under Section 1983, a plaintiff must allege sufficient factual matter, accepted as true, to establish, among other things: (1) they were deprived of a constitutional right. *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (internal quotation marks and citation omitted). Thus, regardless of whether Plaintiff brought a cause of action as a *Monell* claim alleging a violation of the Fourth Amendment or an ordinary Section 1983 claim alleging a violation of the Fourth Amendment, if Plaintiff cannot establish a violation of the Fourth Amendment by Defendants, the second, third, fourth, and fifth causes of action would each fail to state a cognizable claim under the Fourth Amendment.

[3] "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967).

who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990).

Hence, "[t]o invoke the protections of the Fourth Amendment, a person must show he had a legitimate expectation of privacy." *United States v. Nerber,* 222 F.3d 597, 599 (9th Cir. 2000) (internal quotation marks and citation omitted); *see also United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002). To establish a legitimate expectation of privacy, a person must show (1) a subjective expectation of privacy (2) that society is prepared to recognize as objectively reasonable. *Id.* (*citing Smith v. Maryland,* 442 U.S. 735 (1979)). If the individual does so, he then bears "the burden of establishing, under the totality of the circumstances, [that] the search or seizure violated his legitimate expectation of privacy in a particular place." *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991).

Plaintiff fails to state a Fourth Amendment claim that is plausible on its face. Plaintiff cannot show that he had a legitimate expectation of privacy against Defendants use of administrative subpoenas to identify the source of the GPS Tracker secretly installed on the Mayor's vehicle. Nor can Plaintiff show that he had a legitimate expectation of privacy against Defendants disclosing his identity to the Mayor during the course of SPD's investigation.

Plaintiff fails to establish a subjective expectation of privacy in his identity not being discovered by Defendants and disclosed to the Mayor. While Plaintiff purchased the GPS Tracker and secretly installed it on the Mayor's vehicle, it was discovered during a routine mechanic visit and led Defendants to Plaintiff with relative ease. ECF No. 1 at ¶¶ 16, 55. The GPS Tracker contained a SIM card associated with a phone number that led to Plaintiff through the lawful use of administrative subpoenas.[4] *Id.* at ¶¶ 18–22, 27. In fact, Detective Dach received the GPS Tracker

---

[4] Under NRS § 704.201(1), designated law enforcement "may issue a subpoena to a public utility for the name and address of a person listed in the records of the customers of the public utility . . . "[t]o further a criminal or civil investigation." Here, Defendants issued administrative subpoena under NRS § 704.201(1), and, after obtaining Plaintiff's name and address, contacted and interviewed Plaintiff. ECF No. 1 at ¶¶ 22–28. But it is unclear from the allegations in Plaintiff's complaint whether Defendants obtained Plaintiff's name and address from one of the companies which were sent an administrative subpoena or whether this information came from an independent source. Plaintiff alleges that Detective "Dach notified [Detective] Loeschner that he received information from *the sister company of Family 1st* [sic], identifying [Plaintiff] as the purchaser of the [GPS Tracker] as well as data therefrom." ECF No. 1 at ¶ 27 (emphasis added). So, based upon Plaintiff's complaint, the source that provided Defendants with Plaintiff's identity is "the sister company of

on November 8, 2022, and identified Plaintiff as the purchaser the very next day with marginal effort. *Id.* at ¶¶ 21, 27. Additionally, during the course of SPD's investigation, which involved Defendants interviewing Plaintiff, Plaintiff did not request that his identity be withheld from the Mayor, nor did Plaintiff even raise any hint of concern as to his "anonymity." Rather, after being discovered, Plaintiff unapologetically admitted to installing the GPS Tracker on the Mayor's vehicle and tracking her location. ECF No. 1 at ¶¶ 55–57. Plaintiff is retired law enforcement and a private investigator. *Id.* at ¶ 48. He is undoubtedly familiar with police investigations. Given that familiarity, Plaintiff surely understood the serious nature of Defendants' investigation into who secretly installed the GPS Tracker and why they installed it onto the personal vehicle of an unsuspecting female—who is also a public official. Plaintiff's complaint is entirely void of any factual allegations establishing that he could have a subjective expectation of privacy in his identity not being discovered by Defendants and disclosed to the Mayor.

Even if Plaintiff could establish a subjective expectation of privacy, he cannot establish that society is prepared to recognize it as objectively reasonable. "A reasonable expectation of privacy may be shown 'either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" *United States v. Thomas*, 447 F.3d 1191, 1197 (9th Cir. 2006) (quoting *Rakas v. Illinois*, 439 U.S. 128, 142 n.12 (1978)). Plaintiff's argument that he had a reasonable expectation to secretly install the GPS Tracker on the Mayor's vehicle and track her location anonymously is not grounded in concepts of real or personal property law or to understandings that are recognized and permitted by society. Society does not recognize as objectively reasonable Plaintiff's asserted "expectation" that Defendants would not discover his identity and disclose it to the Mayor. The Court is hard pressed to think of a more objectively

---

Family 1st [sic]." However, Plaintiff fails to identify this "sister company" and never alleges that SPD sent an administrative subpoena to it or obtained the information from the company as a result of such a subpoena. *See generally* ECF Nos. 1, 15. And while Plaintiff alleges that the subpoenas sent by Defendants requested, among other things, the "call detail records" for a specified one-week date range, there is no factual allegation in Plaintiff's complaint that Defendants relied upon any information obtained from the administrative subpoenas in order to discover Plaintiff's name and address. ECF No. 1 at ¶ 43. But if Defendants did rely upon administrative subpoenas rather than the "sister company" to which Plaintiff referred in his complaint, the only information Defendants relied upon would have been Plaintiff's name and address, which is entirely lawful under NRS § 704.201(1). Thus, Defendants' use of administrative subpoena during the course of SPD's investigation was lawful.

unreasonable expectation, particularly given Plaintiff's status as a former law enforcement officer. It would be more than difficult for society to safely function if the Fourth Amendment prevented law enforcement from, during the course of an investigation into the source of a tracking device installed on someone's vehicle unbeknownst to them, disclosing the identity of the individual who secretly installed the tracker on the vehicle and tracked the vehicle owner's location. Thus, even if Plaintiff could establish a subjective expectation of privacy, he cannot establish that society is prepared to recognize it as objectively reasonable.[5]

In sum, Plaintiff fails to establish a subjective expectation of privacy in his identity not being discovered by Defendants and disclosed to the Mayor. Even if Plaintiff could establish a subjective expectation of privacy, he cannot establish that society is prepared to recognize it as objectively reasonable. Plaintiff cannot show that he had a legitimate expectation of privacy. Therefore, Plaintiff's complaint fails to meet the broad pleading standard under Rule 8 and does not state a Fourth Amendment claim that is plausible on its face. Thus, the Court grants Defendants' motion to dismiss in regard to the second, third, fourth, and fifth causes of action.

### C.  Plaintiff's Sixth Cause of Action

Finally, Defendants move to dismiss Plaintiff's sixth cause of action on the basis that it fails to state a cognizable Intentional Infliction of Emotional Distress ("IIED") claim under Nevada law. ECF No. 10. To establish an IIED claim, Nevada law requires a plaintiff to allege, in relevant part, that the defendants performed "extreme and outrageous conduct." *Dillard Dep't Stores, Inc. v. Beckwith,* 989 P.2d 882, 886 (Nev. 1999) (en banc). Plaintiff's IIED claim fails for two reasons. First, like the majority of Plaintiff's complaint, Plaintiff's IIED claim offers only labels and conclusions. ECF No. 1 at ¶¶ 170–76. Second, under the circumstances, this is simply not an action under which an IIED claim could be successfully alleged against Defendants because no extreme and outrageous conduct on the part of Defendants occurred, whatsoever.

---

[5]  Plaintiff provided numerous additional variations of his argument that Defendants violated the Fourth Amendment by discovering his identity and disclosing it to the Mayor. *See generally* ECF No. 1. For example, Plaintiff asserts that his identity was constitutionally protected from the Mayor because, according to him, he did nothing wrong. *Id.* at ¶ 33. The Court has considered each additional argument provided by Plaintiff, which are unpersuasive and unsupported, and the Court reaches the same conclusion: Defendants did not violate Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

When read in the context of Plaintiff's complaint, the IIED claim is premised upon his conclusion that Defendants' disclosure of Plaintiff's identity to the Mayor was extreme and outrageous conduct. ECF No. 1 at ¶¶ 170, 171. But the Nevada Supreme Court defines "extreme and outrageous conduct [a]s that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (internal citation omitted). And, here, even after accepting Plaintiff's *factual allegations* as true and drawing all reasonable inferences in his favor, no reasonable person could find that the alleged conduct of Defendants "is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community." *See id.* Therefore, Plaintiff's complaint fails to meet the broad pleading standard under Rule 8 and does not state an IIED claim that is plausible on its face. Thus, the Court grants Defendants' motion to dismiss in regard to the sixth cause of action.

In conclusion, the Court grants Defendants' motion to dismiss in its entirety. ECF No. 10. Each of Plaintiff's causes of action fails to state a claim upon which relief can be granted. *See* ECF No. 1; Fed. R. Civ. P. 12(b)(6). Plaintiff does not seek leave to amend his complaint, and any amendment would be futile because, given the undisputed facts before the Court, no additional set of facts exist that could establish the causes of action Plaintiff attempted to bring against Defendants. *See AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (explaining that, even when a party requests leave to amend, it should not be granted when amendment would be futile (internal citations omitted)). For the reasons contained within this Order, Plaintiff's complaint is dismissed with prejudice.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendants' motion to dismiss (ECF No. 10) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Complaint for Damages (ECF No. 1) is **DISMISSED,** with prejudice, in accordance with this Order.

///

///

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close this case.

IT IS SO ORDERED.

DATED this 13th day of May, 2024.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE